

69767011(Rev. C 12/04) 25/PKG

 **DEALERSHIP CONTRACT**

www.uhaul.com
www.uhauldealer.com

| MCO | RT |
|---|---|
| 790 | 007 |

| MONTH | DAY | YEAR |
|---|---|---|
| 9 | 25 | 06 |

THIS AGREEMENT is by and between the U-HAUL® CO. OF __NEW HAMPSHIRE & MAINE__ ("U-Haul") located at the business mailing address set forth hereafter and __MORGANS STORAGE__ 
(Print Dealer's Name)

__41783__ ("Dealer") located at the business mailing address set forth hereafter. This
(Dealer Code)

agreement is made effective on the date indicated above and if no date is indicated above, then that date of execution by the last part to this agreement is the effective date.

## RECITALS

U-Haul is in the do-it-yourself moving business of renting trucks, trailers and support rental equipment (the "Equipment"). U-Haul offers the Equipment, in part, through a network of independent dealers that generally operate their own primary, pre-existing and independent businesses. Such dealers act as agents of U-Haul for purposes of renting the Equipment. Dealer operates an independent business at the site identified hereafter (the "Dealer Location"). Dealer desires to become a U-Haul dealer and further desires to benefit from the programs generally offered by U-Haul to dealers, on the terms and conditions set forth herein.

## AGREEMENT

1. **Dealership.**
U-Haul hereby appoints Dealer as an agent for the Equipment for and on behalf of U-Haul. Dealer acknowledges that the Equipment is consigned, and title to the Equipment shall remain in U-Haul and/or its affiliates at all times. Dealer agrees to conduct the U-Haul dealership only at the Dealer Location. U-Haul and Dealer agree that the first ninety (90) days of this agreement is probationary.

2. **Commissions; Equipment/Commission Percentages/Additional Commissions Incentive; Fast Pay Program; Commissions Incentive Requirements**

   a. *Commissions.* U-Haul shall pay to Dealer commissions (the "Commissions") on the gross revenue from the rental of the Equipment (the "Commissionable Fees"). Commissionable Fees do not include revenue from the collection of sales tax, deposits, distribution fees, Canadian duty fees, "SAFEMOVE®" fees, "SAFETOW®" fees, collection or credit fees.

   b. *Equipment/Commissions Percentages/Additional Commissions Incentive.* All gross revenue from the rental of the Equipment shall be remitted at least weekly by Dealer to U-Haul as directed by U-Haul. If Dealer is not participating in the Fast Pay Program (further described below), U-Haul shall cause to be mailed to Dealer a check in the amount of the Commissions (as adjusted for applicable deductions, chargebacks and adjustments) earned by Dealer for the rental of the Equipment reported during the preceding month. U-Haul shall pay to Dealer an additional commission incentive in the amount set forth below on all Commissionable Fees for every month in which Dealer has strictly complied with all requirements set forth in paragraph 4 below

   The Commissions shall be based on the following schedule:

   a. Trailers and standard rental equipment
      (except auto transports, tow dollies and motor vehicles)    30% (20% for ONE-WAY RENTALS)
   b. Motor Vehicles                                              15%
   c. Auto transports and tow dollies                             20%

Dealer's Initials __MM__

| Dealer Class | ADDITIONAL COMMISSIONS INCENTIVE | Percent |
|---|---|---|
| "AAA" | Attaining "A" performance level, rental of trailers, and being open 7 days a week, on Web B.E.S.T® Fast Pay and Secured Online Affiliate Rental (S.O.A.R.) Program | 5% |
| "AA" | Attaining "A" performance level, and either (i) rental of trailers, or (ii) being open 7 days a week | 4% |
| "A" | Rental of all motor vehicles, auto transport, tow dollies and other support rental items | 3% |

SELECT DEALER CLASS: "AAA" ____ "AA" ✓ "A" ____

*Note: Dealer class may change automatically if Dealer qualifies for or fails to meet a particular classification as described above.*

c. <u>U-Haul Fast Pay Program (Electronic Funds Transfer Program) and Authorization.</u> Pursuant to Dealer's participation in the Fast Pay Program, U-Haul will electronically deposit into Dealer's account identified below, the Commissions ("Commissions" is defined above but is subject to adjustment for applicable deductions, chargebacks and other adjustments) earned by Dealer for the rental of the Equipment. Furthermore, U-Haul will electronically withdraw from Dealer's account identified below, all gross revenue net due UHI from the Dealer's final closing of the Monday Report (defined in section 4 below) for the rental of the Equipment. Dealer shall maintain in its account for withdrawals an amount of funds sufficient to cover the amount shown on the final closing of the Monday Report.

All withdrawals from Dealer's account hereunder may be conducted weekly by U-Haul. All deposits into Dealer's account shall be conducted (please check one; if nothing is checked, deposits will be conducted weekly):

Weekly: ____; Dealer shall pay $__&__ per week for Fast Pay Program Participation.
Monthly: ____; Dealer shall pay $__&__ per month for Fast Pay Program Participation.

Dealer for purposes of its participation in the U-Haul Fast Pay Program, hereby expressly authorizes U-Haul and U-Haul International, Inc. (the parent company of U-Haul) and the bank indicated below, to DEPOSIT the Commissions earned for the rental of the Equipment in its bank account and in the bank identified below. Furthermore, Dealer hereby expressly authorizes U-Haul and U-Haul International, Inc. to WITHDRAW from its bank account and the bank identified below all the gross revenue from the Dealer's final closing of the Monday Report for the rental of the Equipment from Dealer's account identified below. Dealer shall indemnify and defend U-Haul and U-Haul International, Inc. and hold U-Haul and U-Haul International, Inc. harmless, from any claims, damages, losses demands, suits, causes of actions or disputes regarding Dealer's authorizations herein.

OWNER'S SIGNATURE: _____ DATE: _____

**DEPOSIT**

| CHECKING ACCOUNT INFORMATION: | SAVINGS ACCOUNT INFORMATION: |
|---|---|
| BANK NAME | BANK NAME |
| TRANSIT ROUTING NO. / ACCOUNT NO. ON FILE | TRANSIT ROUTING NO. / ACCOUNT NO. |
| STREET ADDRESS | STREET ADDRESS |
| CITY, STATE (PROVINCE), ZIP (POSTAL CODE) | CITY, STATE (PROVINCE), ZIP (POSTAL CODE) |

**WITHDRAW**

| CHECKING ACCOUNT INFORMATION: | SAVINGS ACCOUNT INFORMATION: |
|---|---|
| BANK NAME | BANK NAME |
| TRANSIT ROUTING NO. / ACCOUNT NO. | TRANSIT ROUTING NO. / ACCOUNT NO. |
| STREET ADDRESS | STREET ADDRESS |
| CITY, STATE (PROVINCE), ZIP (POSTAL CODE) | CITY, STATE (PROVINCE), ZIP (POSTAL CODE) |

Dealer's Initials _____

—2—

d. <u>Commission Incentive Requirements.</u> If Dealer is not participating in the Fast Pay Program or if the Fast Pay Program is not in operation for whatever reason, Dealer shall mail postmarked Monday of every week to U-Haul, as directed by U-Haul in its sole discretion, an accurate report of the Dealer's rental transactions for the seven days preceding that Monday and a current inventory of the Equipment for that Monday (collectively such reports, the "Monday Report") even if no rental transactions have occurred. Dealer shall include with the Monday Report a certified check or money order (and, for customer credit card transactions, the credit card transaction documentation) for all gross revenue from all rental transactions and pre-paid reservation deposits for the prior seven days. Such payment of gross revenue shall not be in the form of cash, customer checks nor Dealer's personal or business credit cards (except as permitted above for customer credit card transactions). If Dealer fails to include its check or money order or, if check or money order is dishonored by Dealer's bank, if Dealer on Fast Pay Program fails to deposit funds sufficient to cover the amount shown on the final closing of the Monday report, if the payment is significantly inaccurate, or if Dealer fails to sign the check, then Dealer shall remit future funds by certified check for not less than the next eight weeks. In addition Dealer must comply with the reservation management policies, procedures and rates including but not limited to notifying reservation management daily of all dispatches, receives and paid reservations, honoring all referral and remote rental requests, sharing equipment and complying with the EZ-FUEL℠ policy program receiving and dispatching procedures and Meaningful Assurance procedures.

3. **U-Haul Obligations to Dealer:**

   a. <u>Web B.E.S.T. Web Site and Software.</u> U-Haul grants to Dealer a limited, non-exclusive, non-transferable and non-assignable license to access the Web B.E.S.T Web Site and to use the Web B.E.S.T Software including any of its related documentation, bulletins, manuals and updates all of which are collectively and hereinafter referred to as "Web B.E.S.T".

   Dealer acknowledges and agrees that Web B.E.S.T. is provided by U-Haul for the purpose of allowing Dealer to automate its U-Haul related activities. Furthermore, Dealer acknowledges and agrees that Web B.E.S.T., among other important benefits, will allow Dealer to utilize an Electronic Scheduling Log for the efficient scheduling of customers and utilization of Equipment, it will allow for Dealer's participation in the Secured Online Affiliate Rental (S.O.A.R) Program, it will allow access to real time online rental rates, and it will allow access to Equipment identification history.

   Dealer shall pay a monthly fee of $10.00 for its access to and use of Web B.E.S.T. Dealer acknowledges and agrees that this fee is subject to change by U-Haul in its sole descretion upon written notice which notice shall be an effective amendment to this agreement.

   Upon request, U-Haul shall provide Dealer with reasonably necessary training for use of Web B.E.S.T. Dealer agrees that it has no ownership rights in Web B.E.S.T. Dealer agrees that it only has a right to access and use Web B.E.S.T only for as long as this Agreement remains in full force and effect. Dealer acknowledges and agrees that Web B.E.S.T. contains certain proprietary information. Dealer hereby agrees to maintain at all times the proprietary nature of Web B.E.S.T. Dealer agrees to reasonably communicate the terms and conditions of this Agreement to all Dealer employees who come into contact with Web B.E.S.T, and to use best efforts to ensure their compliance with such terms and conditions. Web B.E.S.T. contains material, including source code, that is protected by United States Copyright Law and trade secret law, and by international treaty provisions. This Web Site contains trademarks, service marks, other copyrighted material, inventions, know how, potential patentable business method material, design logos, phrases, names, logos or HTML Code which are protected. Dealer does not have ownership rights under the copyright and trademark laws with regard to the "look," "feel," "appearance" and "graphic function" of Web B.E.S.T including but not limited to its color combinations, sounds, layouts and designs. Except as specifically provided by this Agreement, Dealer agrees and acknowledges that its access to and use of Web B.E.S.T. does not confer upon it any other license or permission of access or use to other U-Haul systems or services. Dealer shall not publish, display, disclose, rent, lease, modify, loan, distribute, or create derivative works based on Web B.E.S.T. or any part thereof. Dealer may not reverse engineer, decompile, translate, adapt, or disassemble the Software, nor shall Dealer attempt to create the

Dealer's Initials

source code from the object code for Web B.E.S.T. Any and all derivative works, improvements and enhancements of the Web B.E.S.T shall not inure to Dealer. All rights not granted to Dealer herein are expressly reserved.

U-Haul disclaims any and all responsibility and liability for any interaction, interoperability, access or connection problems, Internet service provider failures or failures and problems with applications, equipment and services which are, directly or indirectly, related to the Dealer's use of it's hardware and software. Furthermore, U-Haul disclaims any and all responsibility and liability for any interruptions, problems or failures occurring on Dealer hardware and software which are caused, directly or indirectly, by Web-related downloads for Web B.E.S.T. or by any access or use of Web B.E.S.T. U-Haul disclaims any and all responsibility and liability for any downtime associated with maintenance of Web B.E.S.T. or for any act or event not within it's control, specifically including but not limited to Acts of God, power failures, strikes, riots, and governmental and regulatory authority. The sole liability of U-Haul related to the Dealer's use of Web B.E.S.T. will be limited to direct actual damages and shall not include any liability for punitive, consequential, special, exemplary or indirect damages, specifically including loss of profits, loss of data or other business interruption damages. U-Haul does not provide, and specifically disclaims, any warranties or representations, explicitly or implicitly, for Web B.E.S.T. and any Web-related downloads for Web B.E.S.T., and specifically disclaims warranties of merchantability, fitness for a particular purpose, non-infringement, and any warranty arising by course of dealing or course of performance. Furthermore, U-Haul specifically disclaims any warranty or representation that the access or use of Web B.E.S.T. will be provided without any downtime, error-free, without interruption, and/or that Web B.E.S.T. will meet Dealer requirements. Web B.E.S.T. is provided on an "AS IS" basis without exception. U-Haul will not accept the responsibility of providing any hardware or software to Dealer, installation services, any printer or paper supplies, hardware or software support for the Dealer, and/or perform any Internet service provider functions.

b. <u>Equipment, Supplies, Training, Telephone and Yellow Pages.</u> U-Haul shall make available Equipment, supplies, basic signage, instructions, promotional and sales material, and necessary training and instructions for operating a U-Haul dealership. U-Haul shall determine, in its sole discretion, the amount and kind of Equipment, supplies, training and instructions for the Dealer Location. U-Haul shall, subject to Dealer's obligations hereunder, install a U-Haul dedicated telephone line and establish such listings in the yellow pages directory or directories selected by U-Haul in its sole discretion. U-Haul in its sole discretion shall refer to Dealer, from time to time, customer reservations that result from the U-Haul 1-800 telephone number or uhaul.com.

c. <u>Hold Harmless.</u> U-Haul shall hold Dealer harmless from any and all liability incurred by Dealer solely in its capacity as a U-Haul dealer for property damage or personal injury to third parties involving the Equipment and to indemnify, hold harmless and defend Dealer against any claims, actions or suits arising against Dealer solely in it's capacity as a U-Haul dealer. This indemnification shall be effective only if the Equipment is being rented or used under a valid U-Haul Rental Contract, if Dealer has complied with U-Haul hookup procedures and other instructions, if Dealer has collected the applicable rental and other fees prior to dispatching the Equipment, if Dealer has performed the U-Haul receiving and dispatching procedures, and if Dealer has issued the appropriate User's Guide, U-Haul Rental Contract and applicable addenda. This indemnification shall not apply to the negligence or misconduct of Dealer, its employees, agents, affiliates, subsidiaries or representatives, or if Dealer rents the Equipment to itself or to any of its employees, agents, related entities or representatives of any kind

d. <u>Risk of Loss.</u> U-Haul shall assume all responsibility for loss due to theft, vandalism or damage of the Equipment while in the custody of Dealer; provided, however, that Dealer and its agents shall use reasonable care to preserve the Equipment and all other U-Haul property in its custody.

e. <u>Limited License.</u> U-Haul grants to Dealer a non-exclusive, non-assignable and limited license to use the trademark "U-Haul" and other U-Haul trademarks, service marks, brandnames and trade dress (herein the "U-Haul Marks") as well as certain copyright materials in connection with the dealership, the terms of this Agreement and in accordance with U-Haul policies. The Dealer shall not use the

Dealer's Initials ___

—4—

U-Haul Marks or any U-Haul logo or copyright materials in any promotion, telephone listing, domain name, internet or other computer site, or otherwise without the prior and specific written consent of the U-Haul Company President. Except as specifically provided by the terms of this Agreement, no right, property, license, permission or interest of any kind in or to the U-Haul Marks or U-Haul copyright materials is or is intended to be given or transferred to or acquired by Dealer. Dealer shall in no way contest or deny the validity of, or the use, right or title of U-Haul, in or to the U-Haul Marks and U-Haul copyright materials, and shall not encourage or assist others directly or indirectly to do so. Dealer shall not utilize the U-Haul Marks or U-Haul copyright materials in any manner that would diminish their value or harm the reputation of U-Haul. This limited license shall terminate immediately upon termination of this Agreement, and dealer agrees to pay to U-Haul all benefits dealer may receive from the U-Haul Marks and copyright materials thereafter. Upon termination of this Dealership Contract, dealer immediately shall discontinue all use of the U-Haul Marks and U-Haul copyright material and surrender to U-Haul all U-Haul equipment, signs, documents as well as any other materials bearing the U-Haul Marks, and make no further use of any signs, graphics and materials.

f. Quick Claim Settlement Commissions. U-Haul shall pay Dealer (monthly with Commissions) an amount equal to 35% of the total amount collected by Dealer from customers pursuant to the quick claim settlement (QCS) procedures.

4. **Dealer Obligations to U-Haul:**

   a. Equipment Promotion and Instruction Compliance. Dealer shall effectively promote all Equipment rentals at the Dealer Location including, but not limited to, properly cleaning and displaying the Equipment. Dealer shall (i) read and comply with all U-Haul maintenance and hookup procedures, U-Haul manuals, decals, bulletins, User's Guides and programs, and cause all personnel employed at the Dealer Location to be properly trained and to comply with all U-Haul instructions and procedures; (ii) cause the appropriate U-Haul rental contract and addenda to be properly completed, signed by the customer, and delivered to the customer; (iii) collect all rental fees prior to dispatching the Equipment and issue the appropriate User's Guide; (iv) instruct each customer in the proper use and operation of the Equipment as outlined by the User's Guide; (v) attach or hook up the Equipment on or to the customer's vehicle in a safe and workmanlike manner, and in accordance with U-Haul written procedures; and (vi) comply with all terms, procedures and programs set forth in the U-Haul Dealer Operations Manual, including but not limited to prominently displaying the Equipment, distributing the Equipment, notifying reservation management, sharing equipment, following Meaningful Assurance procedures, dispatching and receiving the Equipment, honoring customer referrals issued by U-Haul, scheduling the Equipment using the scheduling log, performing authorized safety certifications, completing equipment damage reports (EDR), using QCS procedures, and inspecting for the use of and charging the customer for used, damaged and lost dollies and pads. Dealer shall perform receiving and dispatching procedures as explained by U-Haul, on each and every item of the Equipment upon receipt and dispatch of the Equipment, including but not limited to completing all relevant inspections, inquiries and paperwork, checking and correcting the tire pressure, fluid levels, non-functioning lights, cleanliness, and visible damage. Dealer shall perform repair work designated as "Minor Maintenance" (as set forth in the Dealer Operations Manual) on the Equipment. All parts needed for such repair shall be furnished by or paid for by U-Haul. Dealer shall report to U-Haul, within 24 hours, all damaged Equipment, Equipment requiring maintenance or repair, and missing Equipment

   b. Telephone and Yellow Pages. Dealer shall pay, via a deduction from Commissions, the monthly cost of a telephone line to be installed and maintained at the Dealer Location at the sole discretion of U-Haul. The telephone line shall be in the name of U-Haul and Dealer shall acquire no interest therein. If U-Haul elects to install a telephone line, U-Haul shall pay the initial installation costs as well as monthly charges of the telephone line until the yellow pages directory in which such number appears is published. Dealer shall pay, via a deduction from Commissions, the cost of an in-column listing in a yellow pages directory selected by U-Haul if the Dealer does not have a U-Haul company owned phone. Dealer also shall be eligible for inclusion in yellow pages display advertising, at the sole discretion of U-Haul, contingent upon Dealer obtaining and maintaining AAA

—5—                                Dealer's Initials ___

status. Dealer also shall pay, via a deduction from Commissions, the amount of $5 for each one-way rental that is the result of a reservation made through the U-Haul 1-800 telephone number or uhaul.com.

c. Record Keeping. Dealer shall account for all odometer mileage accumulated on the Equipment, if relevant, while in Dealer's possession and allow U-Haul to deduct from Dealer's commission $1 per mile for any mileage not properly accounted for on a valid rental contract. Dealer shall also allow U-Haul to deduct $100 for any missing rental contract or reservation deposit receipt and to deduct the face value of any unreported contract. Dealer also agrees to account for all rental contract books and reservation deposit receipt books issued to Dealer. Dealer shall permit U-Haul representatives to enter Dealer's premises at any reasonable time to inspect or remove U-Haul accounting records, equipment, supplies, electronic reporting and computer equipment, and other U-Haul property. Dealer shall properly maintain all U-Haul accounting records, contracts, equipment, supplies and other property in Dealer's custody. Rental contracts and nightly closings are to be kept for three (3) years. Dealer shall immediately return all such U-Haul property to U-Haul upon request.

d. Equipment Revenue and Taxes. Dealer agrees to collect all gross revenues from the rental of the Equipment in Dealer's capacity as agent and fiduciary for U-Haul and that title and ownership of such funds are vested at all times in U-Haul. Dealer shall collect from the customer any sales or use tax applicable to the rental of the Equipment, and report and remit such taxes to U-Haul as appropriate, unless otherwise required by law. Dealer shall indemnify U-Haul for any liability incurred as a result of the breach of this provision.

e. Location and Transferability. Dealer agrees that any change in the Dealer Location shall require prior written notice to and prior written approval by U-Haul. Dealer further agrees that it will give thirty (30) days written notice of any intended sale or transfer of ownership of the business located at the Dealer Location. The dealership and this Agreement are not transferable without the prior written consent of U-Haul.

f. Goodwill. Dealer acknowledges that any goodwill which may accrue as a result of this Agreement shall be for the benefit of U-Haul. Dealer further agrees that any goodwill or other value that may arise from Dealer's use of the U-Haul trademark, U-Haul intellectual property, or U-Haul confidential information will belong exclusively to U-Haul.

g. Proprietary and Confidential Information. For the specific purposes of this Agreement, U-Haul will disclose to Dealer certain U-Haul proprietary information that may include, but not be limited to, the Dealer Operations Manual, pricing information, scheduling logs, sales practices, financial information, marketing strategies, day-to-day business operations, capabilities, systems and technologies. Dealer acknowledges and agrees that all such information shall be confidential and shall, at all times, remain confidential. Furthermore, Dealer agrees that it shall not, at any time, during or after the termination of this Agreement, directly or indirectly, reveal, disseminate or disclose, in any manner, any such information to any person, firm, corporation or other entity of any kind, unless such disclosure is to a U-Haul related entity or such disclosure is expressly authorized in writing by the U-Haul Company President. Dealer further acknowledges and agrees that any breach of this provision shall cause U-Haul irreparable harm and as a result, U-Haul is without any adequate remedy at law.

h. Noncompetition Covenant. Dealer represents, warrants and covenants that, during the term of this Agreement, Dealer, for itself, its heirs, assigns, successors, shareholders, officers, directors, employees, principals, partners, agents, managers and members, shall not engage in any rental business at the Dealer Location or at any other place which offers the rental of equipment similar to that offered by U-Haul. Upon termination of this Agreement for any reason, Dealer warrants, covenants and agrees that, at the Dealer Location and within the greater of a three (3) mile radius of the Dealer Location or the geographical limits of the county of the Dealer Location, Dealer, its heirs, assigns, successors, shareholders, officers, directors, employees, principals, partners, agents, managers and members shall not represent or render any service either on its own behalf or in any capacity for any other person or entity engaged in any rental business similar to that operated by

Dealer's Initials

U-Haul for the duration of the then-existing or contracted-for telephone directory listing(s) for the Dealer Location.

Dealer acknowledges and agrees that it receives a considerable benefit from its access to and use of Web B.E.S.T and as consideration for U-Haul's provision of Web B.E.S.T to Dealer, Dealer hereby further agrees to extend the noncompetition obligation of Dealer as set forth above to cover the rental of do-it-yourself moving equipment for a period of one (1) year after termination of all other accumulated Dealer noncompetition obligations as set forth above.

Dealer acknowledges and agrees that any breach of this noncompetition covenant shall cause U-Haul irreparable harm and as a result, U-Haul shall have no adequate remedy at law. Furthermore, Dealer acknowledges and agrees that U-Haul has the right to seek and obtain injunctive relief against any breach of the noncompetition covenant of the Dealership Contract. In the event any part of this provision is determined to be unenforceable by a court of competent jurisdiction, the remainder of this provision shall be enforceable to the fullest extent permitted by such court.

i. Compliance with Laws. Dealer shall operate the U-Haul dealership in compliance with all applicable laws.

j. Agency Relationship. Dealer represents, warrants and agrees that the dealership created under this Agreement is an agency relationship and shall not under any circumstances constitute a franchise under any law. Dealer hereby disclaims and waives any rights that may arise under such franchise laws and agrees not to assert any rights based on franchise law.

5. **Termination.**

This Agreement may be terminated by either party without cause on thirty (30) days written notice or immediately by either party without notice upon breach of this Agreement by the other party. In addition, the Agreement upon U-Haul's sole discretion, may be terminated immediately without notice, upon the transfer of the Dealer Location or the Dealer's business, or the dissolution, termination, death, insolvency or bankruptcy of Dealer. In any event, this Agreement shall terminate at the later of three (3) years from the effective date hereof or upon the expiration of the Yellow Pages advertising then in effect on such three (3) year anniversary date. Within ninety (90) days after the termination of this Agreement, U-Haul shall render a final account of the dealership and each party shall promptly remit any sums due to the other party.

6. **Miscellaneous.**

In the event suit or action is instituted by U-Haul under this Agreement, the Dealer agrees to pay in addition to the costs and expenses permitted by statute or judment, reasonable attorneys' fees. This Agreement may be assigned by U-Haul to any affiliated U-Haul company upon notice to Dealer. This Agreement may not be assigned by Dealer. No alteration (handwritten or otherwise) to this Agreement shall be valid, even if initialed by the parties. No amendment of this Agreement, or waiver of any of its provisions, shall be binding upon either party hereto unless the same be agreed to in a writing by the President of U-Haul. All written notices to be provided hereunder shall be sent by mail to the business office addresses of the parties identified at the end of this Agreement. Each provision of this Agreement is severable. If any provision herein is unenforceable for any reason whatsoever, and such unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts shall be valid and enforceable. The headings contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

This Agreement supersedes any and all prior discussions and agreements between the parties (including any previously executed Dealership Contract) and this Agreement to the extent set forth herein contains the sole, final and complete expression and understanding among the parties hereto with respect to the transactions contemplated hereby. No person other than the parties hereto shall have any rights or claims under this Agreement. The parties agree that adequate consideration has been given for this Agreement. Dealer further acknowledges that U-Haul is engaged in additional programs related to the do-it-yourself moving business in which Dealer may be invited to participate, from time to time, and that Dealer may be required to provide additional consideration for the opportunity to participate in such programs.

—7—

Dealer's Initials

DEALER:

___MIRIAM STORAGE___
(DEALERSHIP BUSINESS NAME)

___400 BEDFORD ST___
(DEALERSHIP STREET ADDRESS)

___MANCHESTER NH 03101___
(DEALERSHIP CITY, STATE, ZIP CODE)

_____
(DEALERSHIP LOCATION ADDRESS, IF DIFFERENT)

_____
(ADDITIONAL ADDRESS AT WHICH EQUIPMENT IS STORED, IF APPLICABLE)

_____   ___41783___
STATE SALES TAX      DEALERSHIP CODE
REGISTRATION NUMBER  NUMBER ASSIGNED

By: ___Charles W Merlin___
Printed name: ___Charles W Merlin___
Title: ___Manager___
Date: ___Sept 25, 2026___

U-HAUL:

U-HAUL CO OF ___New Hampshire & Maine___

___515 S. Willow ST___
(U-HAUL STREET ADDRESS)

___Manchester, NH 03103___
(U-HAUL CITY, STATE, ZIP CODE)

By: _____
    U-HAUL CO PRESIDENT SIGNATURE

Printed Name: ___Jim Hynes___
Title: ___ADVP___
Date: ___9-28-06___

If Dealer is a Corporation or Partnership, please list below, by name and/or title, those individuals who are authorized to bind the Dealer to contractual obligations:

_____
_____
_____

—8—

| DEALER: | U-HAUL: |
|---|---|
| Morgan Self Storage <br> (DEALERSHIP BUSINESS NAME) | U-HAUL CO OF New Hampshire & Maine |
| 8 Willow ST <br> (DEALERSHIP STREET ADDRESS) | 525 So Willow ST <br> (U-HAUL STREET ADDRESS) |
| Salem, NH 03079 <br> (DEALERSHIP CITY, STATE, ZIP CODE) | Manchester, NH 03103 <br> (U-HAUL CITY, STATE, ZIP CODE) |
| (DEALERSHIP LOCATION ADDRESS, IF DIFFERENT) | By: _[signature]_ <br> U-HAUL CO PRESIDENT SIGNATURE |
| (ADDITIONAL ADDRESS AT WHICH EQUIPMENT IS STORED, IF APPLICABLE) | Printed Name: Jon Hynes <br> Title: ADVP |
| STATE SALES TAX REGISTRATION NUMBER | DEALERSHIP CODE NUMBER ASSIGNED: 41781 | Date: 9-28-06 |

By: _[signature]_
Printed name: Charles W Morgan
Title: Prts
Date: Sept 26, 2006

If Dealer is a Corporation or Partnership, please list below, by name and/or title, those individuals who are authorized to bind the Dealer to contractual obligations:

_____
_____

89767046 2/05 25/PKG

# U-HAUL CO-BRANDED STORAGE TRUCK AGENT RENTAL PROGRAM ("CO-STAR PROGRAM") AGREEMENT

www.uhaul.com
www.uhauldealer.com

| MONTH | DAY | YEAR |
|-------|-----|------|
| 3 | 3 | 06 |

## DEALERSHIP CONTRACT ADDENDUM

THIS ADDENDUM is between U-HAUL® CO. OF _New Hampshire & Maine_ ("U-Haul")

and _Morgan Self Storage_   _417 03_ ("Dealer").
(Print Dealer's Name)   (Dealer Code)

### RECITALS

U-Haul and Dealer previously entered into a Dealership Contract for the rental of Equipment. (Any defined terms not defined herein shall have the same meaning as set forth in the Dealership Contract.)

Dealer is eligible for, and shall remain eligible for, participation in the CO-STAR Program due to its participation in U-Haul's Web B.E.S.T. and Fast Pay programs and due to its participation as an eMove Storage Affiliate.

U-Haul and Dealer desire to enter into this Addendum for the purpose of setting forth the terms and conditions on which U-Haul will assign storage rental truck(s) under the CO-STAR Program. The purpose of this Addendum is to promote the successful management of the assigned storage rental truck(s) and achieve the highest performance level possible for the assigned storage rental truck(s).

### AGREEMENT

**1. U-Haul Obligations to Dealer.**

a. U-Haul shall for the benefit of Dealer: (i) assign to Dealer certain storage rental truck(s) from time to time as determined by U-Haul in its sole discretion; (ii) place decals on the side panels of the assigned storage rental truck(s) that will include Dealer's name, address, phone number and if prior approved by U-Haul and in U-Haul's sole discretion, said decals will include any Dealer trademark and/or logo and/or other Dealer artwork and/or other Dealer advertising (hereinafter "Dealer Logo"); upon Dealer request and consent by U-Haul, U-Haul will create a logo and/or artwork for Dealer and said logo and/or artwork and Dealer's use thereof will be subject to the additional terms and conditions of the "CO-STAR Program Agreement/Dealership Contract Addendum Attachment A" which is attached hereto and hereby incorporated herein. Dealer agrees that U-Haul in its sole discretion will determine exact dimensions and placement of any Dealer information or Dealer Logo; (iii) provide the following dedicated phone number for storage rental truck(s) in need of repair: (_800_) _225-7823_ (provided, however, that U-Haul may change said number on the condition that U-Haul notify Dealer); (iv) schedule for repair, repair and return storage rental trucks within a reasonable period of time under the circumstances; (v) provide help and training on use of the Scheduling Log; (vi) periodically review storage rental truck(s) performance and work load with Dealer regarding standards, implementation, repair, scheduling, and the possibility of additional or fewer storage rental truck(s); and (vii) provide promotional materials; (viii) and upon termination of this Addendum, use reasonable efforts to promptly remove Dealer information and/or Dealer Logo from the assigned storage rental truck(s).

b. On the gross revenue from the rental of the storage rental truck(s), U-Haul shall pay Dealer in accordance with the commission structure set forth in the Dealership Contract **AND** shall pay Dealer a **BONUS** subject to the terms below:

### BONUS COMMISSION:

c. Upon every one (1) year anniversary from the effective date of this Addendum, U-Haul shall pay Dealer an additional two percent (2%) bonus commission on the gross revenue from the rental of the storage rental trucks for the previous year where Dealer has:

(i) exceeded $_12,600_ in gross revenue from the rental of the _DC_ model storage rental truck(s) for the previous year;

2004 © U-Haul International, Inc.

**OR**
 (ii) maintained its yearly aggregate repair costs for the storage rental truck(s) below $3,000

d. If upon any one (1) year anniversary from the effective date of this Addendum, Dealer exceeds $12,000 in gross revenue from the rental of the ____ model storage truck(s) per 1 (c) (i) AND stays below repair costs per 1 (c) (ii) U-Haul shall pay dealer a total of five percent (5%) bonus commission on the gross revenue from the rental of the storage rental trucks for the previous year (the five percent (5%) bonus commission payment hereunder is NOT in addition to the two percent (2%) bonus commission provided in 1 (c.) above).

**2. Dealer Obligations to U-Haul.**

a. Dealer shall pay to U-Haul $50.00 per month as an advertising charge. However, if Dealer is an eMove Storage Affiliate at the Premier Level actively utilizing WebSelfStorage software to operate their storage business, Dealer does not have to pay said advertising charge.

b. Dealer shall: (i) use the Scheduling Log supplied by the U-Haul area field manager; (ii) complete an EDR (Equipment Damage Report) on every accident and all damage incurred; however, if said EDR is not completed by Dealer, Dealer shall forfeit that monthly "additional incentive commission" as set forth in the Dealership Contract; (iii) use QCS (Quick Claim Settlement) to settle with non-Safemove customers for damages that occurred during their rental, and; (iv) follow U-Haul receive and dispatch procedures for the Equipment.

c. Dealer acknowledges and agrees that (i) storage rental trucks are an integral part of the overall U-Haul business; (ii) after the initial 90 days of this Addendum, if the gross revenue from the rental of the storage rental trucks for any ninety (90) day period is less than $2,070, then any storage rental truck(s) may have the Dealer information and/or Dealer Logo removed and the storage rental truck(s) may be relocated by U-Haul in its sole discretion to different U-Haul locations in order to maximize the benefit of the storage rental truck(s) to the entire U-Haul system or Dealer may pay U-Haul the difference between the gross revenue from the rental of the storage truck(s) and the $2,070⁰⁰; (iii) at times, storage rental truck(s) may need repair and therefore they may be temporarily out of service, and; (v) under these circumstances U-Haul can not and does not guarantee replacement storage rental truck(s) for Dealer at any time. Under these circumstances Dealer will not be responsible for those days that any storage rental truck is out of service.

d. Dealer grants to U-Haul, and its affiliated companies, a limited, non-exclusive, royalty free and revocable license, to reproduce, use and display, Dealer Logo only for the purposes designated in this Addendum.

e. Dealer represents and warrants that it is the rightful owner of Dealer Logo with all appurtenant rights, title and interests.

f. Dealer acknowledges that U-Haul will use reasonable efforts to reproduce Dealer Logo based on its appearance including any of its accompanying colors, designs, sizes and shapes. However, Dealer further acknowledges that some modifications of the Dealer Logo might be required by U-Haul to account for placement and/or reasonable presentation of Dealer Logo on storage rental truck(s). Any modifications hereunder shall be made at U-Haul's sole discretion. Dealer expressly authorizes any modifications hereunder and releases U-Haul from any liability or responsibility for said modifications.

g. Dealer represents and warrants that Dealer shall not have, nor shall Dealer claim, any rights, title or interests, copyright or otherwise, in any U-Haul trademarks, logos, designs, supergraphics, color schematics or other advertising features on the storage rental truck(s) or otherwise.

h. Dealer agrees to indemnify, defend and hold harmless U-Haul and its parents, subsidiaries, affiliates, and their officers, directors, supervisors, employees, successors and agents against all Claims that may arise from (i) any breach of any representation or warranty by Dealer in this Addendum; (ii) any intentional or negligent actions by Dealer with regard to Dealer Logo; or (iii) any claims made by a third party that the Dealer Logo, or a modification thereof per subsection (f.) above, infringes any trademark or copyright or other right of such third party. For purposes of this section, "Claims" mean all claims, demands, lawsuits, liabilities, losses, damages, judgments, settlements or expenses (including reasonable attorney's fees, costs and related expenses) of any nature.

i. Upon any termination of this Addendum, Dealer agrees not to hold U-Haul responsible or liable for U-Haul's use of the Dealer information and/or Dealer Logo during and until, that time that the Dealer information and/or Dealer Logo is removed from the storage rental truck(s).

**3. Noncompetition Covenant.** Dealer represents, warrants and covenants that, during the term of this Addendum, Dealer, for itself, its heirs, assigns, successors, shareholders, officers, directors, employees,

principals, partners, agents, managers and members, shall not engage in any rental business at the Dealer Location or at any other place which offers the rental of equipment similar to that offered by U-Haul. Upon termination of this Addendum for any reason, Dealer warrants, covenants, and agrees that, at the Dealer Location and within the greater of a three (3) mile radius of the Dealer Location or the geographical limits of the county of the Dealer Location, Dealer, its heirs, assigns, successors, shareholders, officers, directors, employees, principals, partners, agents, managers and members shall not represent or render any service either on its own behalf or in any capacity for any other person or entity engaged in any rental business similar to that operated by U-Haul for the duration of the then-existing or contracted-for telephone directory listing(s) for the Dealer Location and further agrees to extend the noncompetition obligation of Dealer as set forth in the Dealership Contract to cover the rental of do-it-yourself moving equipment for a period of one (1) year after termination of all other accumulated Dealer noncompetition obligations under the Dealership Contract and the related Addenda. In the event any part of this paragraph is determined to be unenforceable by a court of competent jurisdiction, the remainder of this paragraph shall be enforceable to the fullest extent permitted by such court.

4. **Termination.** Unless as otherwise provided herein, or at any time after ninety (90) days from the effective date of this Addendum, either party may terminate this Addendum without cause upon seven (7) days written notice to the other party. It is understood that the termination of this Addendum hereunder does not terminate the Dealership Contract, however; this Addendum shall be terminated upon the termination of the Dealership Contract. Both parties payment obligations hereunder shall survive the termination of this Addendum as well as Dealer's obligations under Section 2 and 3.

5. **Consideration.** Each party represents that the respective obligations of the other party in this Addendum and in the Dealership Contract constitute good and valuable consideration.

6. **Dealer Contract.** This Addendum is integrated into the Dealership Contract so as to be one agreement and all other terms and conditions of the Dealership Contract shall remain in place.

DEALER: MORGAN SELF STORAGE
(DEALERSHIP BUSINESS NAME)

400 BEDFORD ST
(DEALERSHIP STREET ADDRESS)

MANCHESTER, NH 03101
(DEALERSHIP CITY, STATE, ZIP CODE)

_____
(DEALERSHIP LOCATION ADDRESS, IF DIFFERENT)

_____
(ADDITIONAL ADDRESS AT WHICH EQUIPMENT IS STORED, IF APPLICABLE)

STATE SALES TAX REGISTRATION NUMBER

4178
DEALERSHIP CODE NUMBER ASSIGNED

By: _____
(AUTHORIZED DEALER SIGNATURE)

Printed Name: CHARLES W. MORLAN
Title: MANAGER
Date: MARCH 3, 2006

U-HAUL:
U-HAUL CO. OF New Hampshire & Maine

515 So. Willow St
(U-HAUL STREET ADDRESS)

Manchester, NH 03102
(U-HAUL CITY, STATE, ZIP CODE)

By: _____
(U-HAUL CO. PRESIDENT SIGNATURE)

Printed Name: Michael Davidson
Title: MCP
Date: 3/3/06

—3—

# CO-STAR PROGRAM AGREEMENT/DEALERSHIP CONTRACT
# ADDENDUM ATTACHMENT A

1. Upon request of Dealer and consent by U-Haul, U-Haul shall, for the benefit of Dealer and for purposes of Dealer's participation in the CO-STAR Program, create a logo and/or artwork for Dealer (hereinafter "CO-STAR Logo");

2. Dealer will have the right to approve CO-STAR Logo and such approval will be conducted by Dealer in a reasonable and good faith manner.

3. Upon Dealer's approval of CO-STAR Logo, U-Haul shall place CO-STAR Logo (along with Dealer's name, address and phone number) on the side panels of Dealer's assigned storage rental truck(s); provided, however, that U-Haul in its sole discretion will determine exact dimensions and placement of CO-STAR Logo and other Dealer information;

4. U-Haul grants to Dealer, a limited, non-exclusive, royalty free and revocable license, to use and display, CO-STAR Logo only for the purposes designated in this CO-STAR Program Agreement/Dealership Contract Addendum.

5. Dealer represents and warrants that Dealer shall not have, nor shall Dealer claim, any rights, interests, ownership or title, trademark or copyright or otherwise, in the CO-STAR Logo. Furthermore, Dealer agrees not to use or register in any country any trademarks, trade names, brand names, logos or other designations resembling or confusingly similar to the CO-STAR Logo.

6. Dealer agrees to indemnify, defend and hold harmless U-Haul and its parents, subsidiaries, affiliates, and their officers, directors, supervisors, employees, successors and agents against all Claims that may arise from any (i) unintentional infringement of the CO-STAR Logo of any trademark right or copyright right or other right of any third party. For purposes of this section, "Claims" mean all claims, demands, lawsuits, liabilities, losses, damages, judgments, settlements or expenses (including reasonable attorney's fees, costs and related expenses) of any nature.

7. Dealer shall not, or cause another, at any time, during or after the termination of the CO-STAR Program Agreement/Dealership Contract Addendum, to use, affix, display, license, distribute, reproduce or copy, in any manner or in any medium, the CO-STAR Logo, except as provided by Dealer's participation in the CO-STAR Program.

8. Dealer agrees that any and all rights and interests including but not limited to consumer recognition or consumer goodwill or monies, that might be acquired by its use of the CO-STAR Logo shall inure to the sole benefit of U-Haul.

9. Dealer and U-Haul agree that all other CO-STAR Program Agreement/Dealership Contract Addendum and Dealership Contract terms and conditions shall remain in full force and effect.

—4—